**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HYDROCARB ENERGY CORPORATION,** | § | **Case No. 16-31922 (Chapter 11)** |
| | § | |
| | § | |
| **GALVESTON BAY ENERGY, LLC,** | § | **Case No. 16-31923 (Chapter 11)** |
| | § | |
| **DEBTORS.** | § | **Jointly Administered Under Case No. 16-31922** |

**THIRD INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND GRANTING ADEQUATE PROTECTION, AND (B) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

**[Relates to Dkt. Nos. 7, 11, 19, 32, 34 and 37]**

This matter came before the Court pursuant to the Motion for Interim and Final Orders (I) Authorizing Use of Cash Collateral of Existing Secured Lenders Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection for the Use Thereof; and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral (the "Motion") filed by the above-captioned debtors (the "Debtors" or "Borrowers")) on April 14, 2016. Pursuant to the Motion, the Debtors[1] seek entry of this Order with the consent of the Agent (defined below). Based on the Motion and the entire record before the Court,

**THE COURT HEREBY FINDS AND CONCLUDES** as follows:

A. On April 13, 2016 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11, thereby commencing their chapter 11 cases (the "Bankruptcy Cases").

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Hydrocarb Energy Corp. (0930); Galveston Bay Energy, LLC (0569).

B. This Court has jurisdiction over the Bankruptcy Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested in the Motion are §§ 105, 361, 362, 363, 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 - 1532 (as amended, the "Bankruptcy Code") and rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C. Shadow Tree Capital Management LLC, as Agent (the "Agent") for the parties identified as "Lenders" (collectively, the "Lenders"), the Lenders, and Hydrocarb Energy Corporation ("HEC") are parties to a Amended and Restated Credit Agreement, originally dated as of August 15, 2014, amended and restated as of June 10, 2015, as amended by the First Amendment to Amended and Restated Credit Agreement, dated as of November 30, 2015 (as amended, the "Credit Agreement"), pursuant to which the Lenders made the following term loan in the original maximum principal amount of $4,545,454. In May of 2015, the Debtors borrowed an additional $356,724 and $118,908 from the respective Lenders (collectively, the "Term Loan").

D. Galveston Bay Energy LLC, a Texas limited liability company ("Galveston Bay"), Hydrocarb Corporation, a Nevada corporation, Hydrocarb Texas Corporation, a Texas corporation, Hydrocarb Namibia Energy Corporation (Proprietary) Limited, a Namibia corporation, Namibia Exploration, Inc., a Nevada corporation (collectively the "Guarantors") guaranteed the Term Loan. Guarantors executed and delivered to Agent a Guarantee and Collateral Agreement, dated as of August 15, 2014 (the "Guaranty"), pursuant to which Guarantors, among other things, guaranteed the prompt payment and performance of all indebtedness and liabilities owing by Borrower to Agent and Lenders under the Credit Agreement and the other Loan Documents (defined below). Under the Guaranty, the Guarantors

granted a security interest in all the personal property belonging to each Guarantor and pledged the stock of each Guarantor.

E. Galveston Bay executed and delivered to Agent a Deed of Trust, Fixture Filing, Assignment of As-Extracted Collateral, Security Agreement and Financing Statement, dated as of August 15, 2014 (the "Deed of Trust"), granting Agent, for the benefit of Lenders, a security interest in and lien upon the Mortgaged Property (as defined in the Deed of Trust). The Mortgaged Property includes, among other things, Galveston Bay's interests in leases and wells in four fields known as Fishers Reef, North Point Bolivar, Redfish Reef and Trinity Bay (collectively, the "Texas Properties").

F. The Debtors, Guarantors, Agent, and Lenders are parties to other documents, instruments, and agreements that evidence, relate to, or secure the Term Loans (each as amended from time to time) are collectively referred to herein as the "Loan Documents". Attached is Exhibit "2" setting out an index of the Loan Documents.

G. Following defaults under the Credit Agreement, the Agent provided written notice to the Debtors of Events of Default under the Credit Agreement and accelerated the amounts due under the Term Loan.

H. The prepetition loan documents described in Exhibit "2" hereof, as amended, supplemented, or otherwise modified prior to the Petition Date, together with all collateral and ancillary documents executed in connection therewith are collectively referred to herein as the Loan Documents and the principal, interest, costs, expenses, fees, and other amounts owing under the Loan Documents are collectively referred to herein as the "Obligations".

I. The Debtors acknowledge and agree that, as of the date of this agreement, the amount of the Obligations owing under the Loan Documents included (i) unpaid principal of $5,021,087 under the Term Loan the Lenders made to the Debtors, (ii) accrued and unpaid

interest in the amount of $31,242.32 as of February 15, 2016, plus $3,347.39 per day starting on February 16, 2016, and (iii) attorneys' fees, consultants' fees and other fees, expenses, advances, and costs that are part of the Obligations. The Debtors also acknowledge and agree that (i) the Obligations and all other amounts owing under the Loan Documents are currently due and payable and are accruing interest at the Default Rate, and (ii) Lenders have no obligation to make any further Loans, as such term is defined in the Credit Agreement.

J. The Debtors admit that, as security for repayment of the Obligations, the Agent, for the benefit of the Lenders, holds valid, binding, enforceable, and properly perfected first-priority liens and security interest in and on the Collateral, described in the Loan Documents, whether then owned or thereafter acquired or arising, together with all proceeds and products thereof, including the cash collateral (collectively, the "Collateral").

K. The Debtors further admit that: (a) the Obligations and any other amounts owing to the Lenders pursuant to the Loan Documents are due and owing, are legally binding and enforceable obligations of the Debtors, and are not subject to any offset, defense, claims, counterclaims or any other diminution of any type, kind or nature whatsoever; (b) the Loan Documents are valid and enforceable against the Debtors in accordance with their terms, are not subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and are not subject to avoidance pursuant to applicable state or federal laws; (c) the liens and security interests of the Agent for the benefit of the Lenders in, to, and against all of the Collateral are first-priority valid, binding, enforceable and properly perfected liens and security interests, and are not subject to avoidance under any state and federal law; and (d) there are no existing claims or causes of action of the Debtors, breaches of contract or other liabilities, whether liquidated or unliquidated, direct or indirect, and whether arising under state or federal law (including the Bankruptcy Code) against the Agent or the Lenders, arising from the

relationships between the Debtors, on one hand, and the Agent and the Lenders, on the other hand.

L. The Debtors stipulate that all cash, negotiable instruments, deposit accounts, and other cash equivalents (including the proceeds, products, offspring, rents, or profits of the Collateral as provided in Section 552(b) of the Bankruptcy Code), whether existing before or after the commencement of the Bankruptcy Cases, constitute the cash collateral of the Agent, the Lenders and Archrock, as defined below, within the meaning of Sections 363(a) and 552(b) of the Bankruptcy Code (the "Cash Collateral").

M. The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their business without the use of Cash Collateral. The ability of the Debtors to pay employees and otherwise finance its operations is essential to the Debtors' continued viability; and the Debtors' critical need for use of Cash Collateral is immediate. Without the use of Cash Collateral, the continued operation of the Debtors' business would not be possible.

N. On April 15, 2016, the Court signed an agreed Interim Order Authorizing Use of Cash Collateral and (II) Scheduling Continued Hearing (the "1st Interim Cash Collateral Order"). The Court authorized the Debtors' use of $21,939.12 plus applicable withholdings of Cash Collateral and continued the first interim hearing until Monday, April 25, 2016 at 9:30 a.m.

O. On April 25, 2016, the Court signed the Second Interim Order (a) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code and Granting Adequate Protection, and (b) Scheduling a Continued Interim Hearing Pursuant to Bankruptcy Rule 4001 (the "2nd Interim Cash Collateral Order").

P. On April 25, 2016, Archrock Partners Operating, L.L.C. ("Archrock") filed a limited objection to the use of cash collateral (Dkt. No. 32). On April 26, 2016, Galveston

County and Harris County (the "Taxing Authorities") also filed an objection the use of cash collateral (Dkt. No. 37).

Q. The Texas General Land Office ("GLO") asserts both statutory and contractual liens on, among other property, the Debtors' oil and gas production and proceeds therefrom to secure the payment of any unpaid royalties and any other amounts due to the GLO.

R. Archrock, the Taxing Authorities and GLO assert that they hold claims and liens senior in priority and superior in right of payment to the Lenders. The Lenders do not agree. The entry of any orders authorizing the use of Cash Collateral does not affect, abridge or impair the rights of the Lenders, Archrock, the Taxing Authorities and the GLO as to the priority of each parties' respective interests in the Cash Collateral or to the allowance and priority of the Lenders', Archrock's, the Taxing Authorities' and the GLO claims and liens. All rights to make such arguments in any subsequent proceedings is reserved to the Lenders, Archrock, the Taxing Authorities and the GLO.

S. For purposes of any cash collateral orders, the Lenders, Archrock, Taxing Authorities and GLO claim that the Debtors seek to use their respective Collateral and Cash Collateral. The rights of Lenders, Archrock, the Taxing Authorities and GLO to contest any other parties' contention in a subsequent proceeding are unimpaired by any cash collateral orders.

T. The Debtors have requested that the Agent consent to the limited use of Cash Collateral for another period. The Debtors undertook arm's-length negotiations with the Agent, Archrock and the Taxing Authorities with respect to the further interim and limited use of Cash Collateral addressed pursuant to the terms of this order (the "Order" or "3rd Interim Cash Collateral Order").

U. The Agent is willing to allow the Debtors to use its Cash Collateral on an interim basis pursuant to the terms and conditions set forth in this Order. The terms and conditions of the proposed use of Cash Collateral pursuant to this Order are fair and reasonable, were negotiated by the parties in good faith at arm's length, and the parties otherwise acted in good faith. Neither the Agent nor the Lenders have agreed to any further or other use of Cash Collateral for any other purpose except as set forth in this Order.

V. The Agent and the Lenders are not in control of the Debtors or their operations or acting as a "controlling person," "responsible person," "managing agent," or "owner or operator" with respect to the operation or management of the Debtors (as such terms are defined in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, or any similar state or federal statute) or owe any fiduciary duty to the Debtors, their bankruptcy estates or their creditors. The Agent's and the Lenders' relationship with the Debtors is not a joint venture or partnership with the Debtors.

W. The Debtors have provided sufficient notice of the Court's hearing resulting in the entry of this Order. Sufficient and adequate notice under the circumstances of the Motion and the relief granted in this Order has been given pursuant to Sections 102(1) and 363(c) of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001.

X. Based on the record before this Court, there is good cause for the Court to authorize the Debtors' third interim use of Cash Collateral under the terms and conditions stated herein (and not otherwise).

Y. Each of the foregoing findings by the Court will be deemed a finding of fact if, and to the full extent, that it contains factual findings and a conclusion of law if, and to the full extent, that it makes legal conclusions.

Based upon the foregoing findings and conclusions, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED** as follows:

1. The paragraphs contained in the foregoing findings and conclusions of this Order are incorporated herein by reference, and the Debtors and the Agent consent and stipulate to the facts and findings contained in such preamble and to the entry of this Order.

2. The Motion is GRANTED on another interim basis as provided in this Order. All objections to the Motion on an interim basis are overruled.

3. Pursuant to Section 363(c) of the Bankruptcy Code, the Debtors shall be, and hereby is, authorized to use the Cash Collateral on an interim basis upon (and only upon) the terms and conditions set forth in this Order.

4. The Debtors' use of Cash Collateral is limited to payment of the authorized expenses pursuant to the budget attached hereto as Exhibit 1 (the "Budget") and for no other purpose without the prior written consent of the Agent from May 2, 2016 through and including May __, 2016 (the "Third Interim Period"). The Debtors are hereby authorized to use the Cash Collateral only to pay the actual, necessary, and ordinary expenses of the Debtors in the categories and during the periods set forth in the Budget not to exceed the amounts set forth in the Budget.

5. The Debtors' compliance with the Budget will be tested weekly and the Debtors must comply with the Budget as of the end of each week (beginning with the week ending April 29, 2016), the aggregate amount of all expenses (exclusive of UST Fees) actually paid by the Debtors from April 25, 2016 through the end of such week does not exceed by 10% or more the aggregate amount of Expenses set forth in the Budget for the same period, without regard in which category such expenses are contained (the "Permitted Variances"), unless the Debtors

have obtained prior written approval from the Agent. The Budget may be amended from time to time without further order of this Court upon the prior written agreement of the Debtors and the Agent, and such amended budget shall become the Budget under this Order.

6. Notwithstanding any other provision in this order, in the event the Debtors possess any cash or cash equivalents during the pendency of the Bankruptcy Cases that is not subject to the Agent's liens or security interests, such cash or cash equivalents shall be used and expended (or deemed to have been used and expended) by the Debtors prior to the use of any Cash Collateral.

7. The Debtors shall immediately, and shall continue to, segregate, remit, and deposit all Cash Collateral in the Debtors' accounts, possession, custody, or control, and which the Debtors may receive in the future, in accordance with the applicable cash management orders entered by this Court. The bank accounts of either Debtor (the "Cash Collateral Accounts") shall be in the name of a Debtor, but the Debtors shall be prohibited from withdrawing funds from the Cash Collateral Accounts except in strict compliance with the terms of this Order. The Cash Collateral Accounts shall be maintained with Wells Fargo Bank, N.A.

8. Unless extended further with the written consent of the Agent (confirmed by the entry of a further order of this Court), the authorization granted to the Debtors to use Cash Collateral under this Order shall terminate immediately upon the *earliest* to occur of the following (the date of such termination being the "Termination Date"): (i) the conclusion of either the fourth interim hearing on further use of Cash Collateral (the "4th Interim Hearing") and Final Hearing, (ii) the entry of an order dismissing the Bankruptcy Cases, (iii) the entry of an order converting the Bankruptcy Cases to chapter 7; (iv) the entry of an order appointing a trustee or an examiner with expanded powers for the Debtors' estate or with respect to the Debtors' property; (v) the entry of an order reversing, vacating, or otherwise amending,

supplementing, or modifying this Order, (vi) the entry of an order granting relief from the automatic stay to any creditor (other than the Agent or the Lenders) holding or asserting a lien in the Collateral, (vii) the entry of an order for relief under Section 506(c) of the Bankruptcy Code with respect to the Collateral, (viii) the filing by the Debtors, without the Agent's and the Lenders' prior written consent, of any motion in the Bankruptcy Cases: (A) to obtain financing under Section 364 of the Bankruptcy Code from any person or entity other than the Agent and the Lenders, or (B) to grant a lien, security interest, or claim with respect to the Collateral in favor of any party other than the Agent and the Lenders; (ix) the Debtors' breach or failure to comply with any term or provision of this Order. Notwithstanding any such termination, the rights and obligations of the Debtors and the rights, claims, liens, priorities, and other benefits and protections afforded to the Agent on behalf of the Lenders, Archrock, the Taxing Authorities and the GLO under this Order shall remain unimpaired and unaffected by any such termination, and shall survive any such termination.

9. Following the Termination Date, and upon four (4) business day's written notice (which may be delivered by electronic mail) to the Debtors, their counsel, the United States Trustee, and counsel for any official committee (if appointed), unless the Debtors obtain an order from the Court extending the use of Cash Collateral or otherwise maintaining the automatic stay in effect within such four day notice period, the automatic stay of Section 362(a) of the Bankruptcy Code shall be deemed terminated (and the fourteen-day stay provided by Bankruptcy Rule 4001(a)(3) shall be deemed waived) without the necessity of any further action by the Agent or any further authorization by this Court in order to permit the Agent and the Lenders to exercise all rights and remedies provided for in this Order, the Loan Documents, and applicable law, including, but not limited to, the Agent's rights to apply the Cash Collateral and any other

proceeds of the Collateral to the Obligations in accordance with the terms of the Loan Documents and applicable law.

10. Notwithstanding anything in Section 552 of the Bankruptcy Code to the contrary, the Agent shall have, and is hereby granted, replacement liens and security interests in and on all property of the Debtors and their bankruptcy estates, including property acquired by the Debtors and their bankruptcy estates after the Petition Date (the "Replacement Liens"), to the extent necessary to adequately protect the Lenders from any diminution in the value of their interests in property of the Debtors' estates as a result of the entry of this Order, the use of Cash Collateral authorized hereby, and the imposition of the automatic stay in the Bankruptcy Cases. The Replacement Liens shall be effective and perfected as of the date of the entry of this Order and without the necessity of the execution by the Debtors of any security agreement, pledge agreement, financing statement or any other documents and shall have the same validity, priority, and enforceability as Agent's liens and security interests in and on the Collateral on the Petition Date.

11. To the extent the Replacement Liens granted to the Agent hereunder and in the Order do not provide the Lenders with adequate protection of their interests in the Cash Collateral, the Agent shall have, for the benefit of the Lenders, a super-priority administrative expense claim under Section 507(b) of the Bankruptcy Code as necessary to fully compensate the Lenders for the use of Cash Collateral by the Debtors (the "Super-Priority Claims"). Save and except any Super-Priority Claim or other administrative claim that may be awarded to either Archrock, the Taxing Authorities and/or the GLO that is determined to hold a lien superior to that of the Lenders and to have an interest in the Cash Collateral: (i) the Super-Priority Claims shall have priority over all administrative expenses of any kind incurred in the Bankruptcy Cases, including such administrative expenses of the kinds specified in, or allowable under,

Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 of the Bankruptcy Code; and (ii) subject only to the Carve-Out (defined below), no costs or expenses of administration which have been or may be incurred in these Bankruptcy Cases, any conversion of the Bankruptcy Cases pursuant to Section 1112 of the Bankruptcy Code, or in any other proceeding related hereto, and no priority claims are, or will be, prior to or on a parity with the Super-Priority Claims.

12. As additional adequate protection for the Agent and the Lenders, the Debtors are authorized and directed to maintain insurance upon all of the Collateral in such amounts and of such kinds comparable to that in effect on the Petition Date.

13. The liens and claims of the Agent and the Lenders (including those liens and claims granted to the Agent pursuant to this Order) shall be subject only to the following (collectively, the "Carve-Out"): (a) the allowed and approved fees, costs and expenses of the Debtors' retained professionals up to the amount set forth in the Budget (the "Professional Fees/Reimbursements"); and (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) (the "UST Fees"); *provided*, *however*, that any Professional Fees/Reimbursements payable from the Carve-Out shall be paid first from prepetition retainers held by or for the benefit of such professional, and *provided further*, *however*, that nothing herein shall be construed to impair the ability of any party to object to any of the Professional Fees/Reimbursements.

14. None of the Cash Collateral or the Carve-Out may be used to: (i) object to, contest, challenge, or raise any defenses to the validity, perfection, priority or enforceability of the Obligations, or the liens in favor of the Agent securing the Obligations; (ii) object to or contest in any manner, or raise any alleged defenses to the validity, perfection, priority or enforceability of the Obligations owing to the Lenders, or the liens in favor of the Agent or the

Lenders securing the Obligations; (iii) assert any claims or causes of action against the Agent or the Lenders of any type, including, without limitation, any avoidance actions or requests for subordination under Chapter 5 of the Bankruptcy Code, or any claim or cause of action related to the Loan Documents or otherwise; or (iv) prepare or prosecute any adversary proceeding or contested matter in which the Agent or any of the Lenders is named as the defendant or respondent (which shall include the service of discovery or the conduct of Bankruptcy Rule 2004 examinations in connection with the preparation of any contemplated adversary proceeding or contested matter).

15. No later than the forty-fifth (45th) day after April 26, 2016, the date of entry of the 2nd Interim Cash Collateral Order (the "Challenge Period"), any party in interest (including any official committee appointed in the Bankruptcy Cases) other than the Debtors may commence an adversary proceeding or other contested matter objecting to, contesting, or challenging the amount, validity, priority, or enforceability of the Obligations or the liens in favor of the Agent and the Lenders securing the Obligations. If no such adversary proceeding or contested matter is commenced within the Challenge Period, the Obligations will be deemed and adjudicated finally and indefeasibly as valid and enforceable, and the liens in favor of the Agent and the Lenders securing the Obligations will be deemed and adjudicated finally and indefeasibly as valid, enforceable and perfected liens in the Collateral as set forth in the Loan Documents, which adjudication shall be binding on any trustee or examiner with expanded powers appointed for the Debtors' estates or the Debtors' property. The Debtors hereby waive and release any right to challenge the amount, validity, or enforceability of the Obligations or the liens in favor of the Agent and the Lenders securing the Obligations. For the avoidance of doubt, this Order and/or the Challenge Period shall not affect the rights of Archrock, the Taxing Authorities and/or the GLO to assert at any time that its claims and liens are superior or senior in

priority to the consensual liens in favor of the Lenders and such rights are preserved and unabridged by this Order.

16. The Debtors shall make available to the Agent, its counsel, and consultants, upon reasonable request, the Debtors' books and records and other financial information.

17. In addition to its other obligations under the Loan Documents, the Debtors will, and will cause its employees, attorneys, consultants, representatives, and agents (the "Borrower Representatives") to, reasonably cooperate fully with Agent and Lenders and their respective attorneys, consultants, representatives, and agents (the "Lender Representatives") regarding environmental matters or issues related to the Mortgaged Property (the "Environmental Matters"), which reasonable cooperation shall include, without limitation, permitting the Lender Representatives to (a) inspect the Mortgaged Property, (b) examine and make copies of any documents, records, reports, filings, recommendations, or proposals related to the Environmental Matters, and (c) discuss the Environmental Matters with the Borrower Representatives; provided, however, such cooperation shall not include the obligation to disclose attorney-client privilege information, attorney-work product, or other similar professional privileges.

18. In the event of the sale of any of the Collateral pursuant to Section 363 of the Bankruptcy Code or under a bankruptcy plan, the Agent, on behalf of the Lenders, shall have the right (at an auction or otherwise) to credit bid an amount equal to all or any portion of the Obligations. Upon the closing of the sale of any of the Collateral pursuant to Section 363 of the Bankruptcy Code or under a bankruptcy plan, the net proceeds (i.e., net of the costs associated with such closing that the Debtors are obligated to pay) of such sale shall be deposited into Lenders' bank account for immediate application to the Obligations, unless a party in interest objects to such application of funds at any time prior to the closing of a sale of any of the Collateral.

19. The Debtors, on behalf of themselves and their bankruptcy estates, waive any and all claims, rights, and powers to surcharge the Agent, the Lenders, the Collateral, and any other property or assets of the Debtors subject in any manner whatsoever to the liens and security interests of the Agent and the Lenders (including the replacement liens) pursuant to Section 506(c) or Section 105(a) of the Bankruptcy Code. The foregoing waiver shall be binding upon any trustee or examiner with expanded powers appointed for the Debtors' estates or with respect to the Debtors' property.

20. Subject to paragraph 9 of this Order, the automatic stay of Section 362(a) of the Bankruptcy Code is hereby vacated and modified to the extent necessary to permit the Agent and the Lenders to take all actions necessary to implement this Order prior to the occurrence of the Termination Date. In the event that the fourteen-day stay provided by Bankruptcy Rule 4001(a)(3) is applicable to any actions necessary for the Agent or the Lenders to take in order to implement this Order prior to the occurrence of the Termination Date, such stay is hereby waived.

21. The provisions of this Order shall be binding upon and inure to the benefit of all parties in interest in these Bankruptcy Cases, including the Agent, the Lenders, the Debtors and their bankruptcy estates, and their respective successors and assigns, including any trustee or examiner with expanded powers appointed for the Debtors' estate or with respect to the Debtors' property.

22. Nothing in this Order will be deemed or construed as an admission or waiver by the Agent, the Lenders, Archrock, Taxing Authorities and the GLO as to adequate protection, or any other issue in these Bankruptcy Cases. Nothing in this Order shall prejudice the Agent's, the Lenders', Archrock's, Taxing Authorities' and the GLO's right to seek an order of this Court prohibiting the Debtors' use of Cash Collateral or seek any other or supplemental relief that the

Agent, the Lenders or Archrock, Taxing Authorities and the GLO may deem necessary and appropriate under the circumstances; and nothing in this Order prejudices the Debtors' or any other party in interest's right to oppose such relief requested by the Agent, the Lenders, Archrock, the Taxing Authorities and the GLO.

23. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

24. No costs or expenses of administration which have been or maybe incurred in the case at any time shall be charged against the Agent and the Lenders pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Agent and Lenders, and no such consent shall be implied from any other action, inaction or acquiescence by and such Agent or Lender.

25. The Agent and the Lenders shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Collateral.

26. For the avoidance of doubt, nothing contained in this Order shall affect or impair the priority, validity or amount of any mechanic's and materialman's lien claims asserted by Archrock arising under applicable non-bankruptcy law that is presently filed or that may be filed in the future in accordance with applicable non-bankruptcy law or section 546(b) of the Bankruptcy Code. Nothing contained in this Order is intended to affect or impair the priority, validity or amount of any statutory lien claims asserted by the Taxing Authorities. The right of Archrock and the Taxing Authorities to assert that its claims and liens are superior or senior in priority to that of the consensual liens in favor of the Lenders is preserved and unabridged by this Order.

27. Notwithstanding any other provisions included in any cash collateral orders entered in these Bankruptcy Cases, or any agreements approved hereby, the statutory liens ("Tax Liens") of the Taxing Authorities shall not be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected and unavoidable. Furthermore, in the event of a sale of any of the Debtors' assets located in the state of Texas, there shall be set aside by the Debtors, from the proceeds of such sale, an amount equal to the secured claims of the Taxing Authorities, in a segregated account, as adequate protection for the secured claims of the Taxing Authorities, prior to the distribution of any proceeds to any other creditor (the "Ad Valorem Reserve "). The liens of the Taxing Authorities shall attach to the Ad Valorem Reserve to the same extent, and with the same priority, as such liens now hold against the property of the Debtors. The Ad Valorem Reserve shall constitute neither (i) the allowance of the claims of the Taxing Authorities, nor (ii) a cap on the amounts the Taxing Authorities may be entitled to receive. The Ad Valorem Reserve may not be distributed prior to the Debtors obtaining either (i) the prior written consent of the Taxing Authorities or (ii) order of the Court (upon a motion duly noticed to the Taxing Authorities). All claims or liens asserted by the Taxing Authorities shall remain subject to objection in all respects, including, but not limited to, the propriety, validity, and extent of the Taxing Authorities liens and/or claims, by any party in interest.

28. Notwithstanding anything in Section 552 of the Bankruptcy Code to the contrary, Archrock shall have, and is hereby granted, replacement liens and security interests in and on all property of the Debtors and their bankruptcy estates, including property acquired by the Debtors and their bankruptcy estates after the Petition Date (the "Other Replacement Liens"), to the extent necessary to adequately protect Archrock from any diminution in the value of its interests in property of the Debtors' estates as a result of the entry of this Order or any prior cash

collateral order in this case, the use of Cash Collateral authorized hereby, and the imposition of the automatic stay in the Bankruptcy Cases. The Other Replacement Liens shall be effective and perfected as of the date of the entry of this Order and without the necessity of the execution by the Debtors of any security agreement, pledge agreement, financing statement or any other documents and shall have the same validity, priority, and enforceability as Archrock's liens and security interests in and to the Collateral on the Petition Date.

29. To the extent the Other Replacement Liens granted to Archrock hereunder and in the Order do not provide Archrock with adequate protection of their interests in the Cash Collateral, Archrock shall have a super-priority administrative expense claim under Section 507(b) of the Bankruptcy Code as necessary to fully compensate Archrock for the use of Cash Collateral by the Debtors (the "Other Super-Priority Claims"). In the event that Archrock's liens are determined to be senior in priority to the Lenders' prepetition liens and Archrock is determined to have an interest in Cash Collateral: (i) the Other Super-Priority Claims shall have priority over all administrative expenses of any kind incurred in the Bankruptcy Cases, including such administrative expenses of the kinds specified in, or allowable under, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 of the Bankruptcy Code; (ii) no costs or expenses of administration which have been or may be incurred in these Bankruptcy Cases, any conversion of the Bankruptcy Cases pursuant to Section 1112 of the Bankruptcy Code, or in any other proceeding related hereto, and no priority claims are, or will be, prior to or on a parity with the Other Super-Priority Claims,

30. Archrock and the Lenders reserve their respective rights to contest the validity, extent and priority among each other as to Replacement Liens, Other Replacement Liens, Super-Priority Claims and the Other Super-Priority Claims.

31. Notwithstanding anything to the contrary herein, this Order is without prejudice to, and shall not limit, the right of Archrock to contest the extent, validity, or priority of the prepetition consensual liens in favor of the Lenders on any portion of the prepetition collateral (the "Prepetition Collateral") on which Archrock asserts liens and security interests. The right of Archrock to file a complaint pursuant to Bankruptcy Rule 7001, seeking to invalidate, subordinate, or otherwise challenge the prepetition indebtedness and/or the Lenders' prepetition liens is unchanged by this Order.

32. All rights of the Debtors and the Lenders to oppose any such challenges or the relief requested by Archrock is preserved.

33. Another hearing on the Motion is set before this Court on May [__], 2016, at ___.m., United States Bankruptcy Court, 515 Rusk, Courtroom 400, Houston, Texas 77002 (the "Fourth Interim Hearing" or "Final Hearing"). If any party in interest has an objection to the Motion or any of the provisions of this Order, such party shall be authorized to assert such objection at the next hearing, provided that a timely written objection is filed with the Court, and concurrently served upon the Office of the U.S. Trustee for the Southern District of Texas: 515 Rusk Street, Suite 3516, Houston, TX 77002 Attn: Hector Duran, hector.duran.jr@usdoj.gov; counsel for the Debtors: Okin & Adams LP, 1113 Vine Street #201, Houston, Texas 77002 Attn: Chris Adams and David Curry, cadams@okinadams.com and dcurry@okinadams.com; and counsel for the Agent and Lenders: Diamond McCarthy, LLP, 909 Fannin, Suite 1500, Houston, TX, 77010 Attn: Kyung S. Lee and William Hotze, klee@diamondmccarthy.com and whotze@diamondmccarthy.com; counsel for Archrock: Anderson, Lehrman, Barre & Maraist, LLP Gaslight Square, 1001 Third Street, Suite 1, Corpus Christi, Texas 78404 Attn: Kevin M. Maraist, kmaraist@albmlaw.com; counsel for the Taxing Authorities: Linebarger Goggan Blair & Sampson, LLP, P.O. Box 3064, Houston, Texas 77253-3064 Attn: Tara L. Grundemeier,

tara.grundemeier@lbgs.com, in each case so that such objections and responses are filed on or before 5:00 p.m. (Central time) at least 2 (two) business days prior to the [Fourth Interim Hearing or Final Hearing. Unless an objecting party appears at the Fourth Interim Hearing or Final Hearing to assert the basis for such objection before the Court, such objection shall be deemed to have been waived and abandoned by such objecting party. At the conclusion of the Third Interim Hearing, the Court will decide whether to schedule another interim hearing or a final hearing on use of Cash Collateral (the "Final Hearing").

34. This Court has and will retain jurisdiction to enforce this 3rd Interim Cash Collateral Order according to its terms.

Dated:____________________

____________________________________________
UNITED STATES BANKRUPTCY JUDGE